**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

EDDIE L. BANKS,

       Plaintiff,

v.                                                           Case No. 6:14-cv-488-Orl-37TBS

CASHCALL, INC.; and DELBERT
SERVICES CORPORATION,

       Defendants.

**ORDER**

This cause is before the Court on the following:

1. Defendants' Motion to Dismiss or, Alternatively, to Compel Arbitration and Stay or Dismiss the Case, and Memorandum in Support (Doc. 15), filed April 2, 2014;

2. Memorandum of Law in Opposition to Defendants' Motion to Dismiss, or Alternatively, to Compel Arbitration and Stay or Dismiss the Case (Doc. 30), filed April 30, 2014;

3. Defendants' Reply Memorandum of Law in Further Support of their Motion to Dismiss or, Alternatively, to Compel Arbitration and Stay or Dismiss the Case (Doc. 33), filed May 19, 2014;

4. Defendants' Notice of Supplemental Authorities (Doc. 55), filed November 11, 2015; and

5. Defendants' [Second] Notice of Supplemental Authorities (Doc. 58), filed February 16, 2016.

Upon consideration, the Court finds that the Motion is due to be granted in part and denied in part.

## BACKGROUND

The instant action is but one of many that seeks to challenge the terms of a high-interest loan agreement issued by Western Sky Financial, LLC ("**Western Sky**"). (*See* Doc. 3 ("**Complaint**"); *see also* Doc. 1-1, pp. 30–35 ("**Loan Agreement**").) According to the Complaint, Plaintiff executed the Loan Agreement on May 1, 2012, pursuant to which Western Sky loaned him the principal amount of $9,925.00 at an annual interest rate of 89.68% ("**Loan**"). (Doc. 3, ¶¶ 14, 15.) Western Sky subsequently transferred and sold the Loan to Defendant Delbert Services Corporation ("**Delbert**"). (*Id.* ¶ 16.) Plaintiff alleges that, in exchange for compensation, Defendant CashCall ("**CashCall**"), *inter alia*: (1) bears all risk of loss on the loans issued by Western Sky, services the loans, and tracks all consumer complaints regarding such loans; and (2) agrees to indemnify Western Sky for all costs arising or resulting from any and all civil, criminal, or administrative claims or actions relating to the loans. (*Id.* ¶ 18.)

Plaintiff made payments on the Loan from May 25, 2012, through December 15, 2013. (*Id.* ¶ 17.) Frustrated by the terms of the Loan Agreement, Plaintiff initiated the instant action alleging that Defendants violated: (1) the Florida Deceptive and Unfair Trade Practices Act; (2) the Florida Consumer Finance Act on excessive interest rates; (3) the Florida Interest, Usury, and Lending Practices Act; (4) the Florida Consumer Collection Practices Act; and (5) the Fair Debt Collection Practices Act. (*Id.*, ¶¶ 24–82.)

Defendants removed the action to this Court on the basis of federal question jurisdiction, supplemental jurisdiction, and diversity jurisdiction. (Doc. 1.)

Shortly thereafter, Defendants moved for dismissal on two distinct grounds and alternatively moved to compel arbitration. (Doc. 15 ("**Motion**").) First, citing a forum-selection clause ("**Forum-Selection Clause**") within the Loan Agreement—which provides that "[t]he Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe ["**Tribe**"] (Doc. 1-1, p. 30)—Defendants request that the Court dismiss the action under the doctrine of *forum non conveniens* ("**Ground One**"). (*Id.* at 2, 5–6, 9–15.) Second, pursuant to both the Forum-Selection Clause and the doctrine of tribal exhaustion, Defendants contend that Plaintiff is required to exhaust his remedies in tribal court before pursuing claims in federal court. (*Id.* at 2–3, 16–18.) Finally, as an alternative to Grounds One and Two, Defendants: (1) move to compel Plaintiff to arbitrate his claims pursuant to the arbitration provisions ("**Arbitration Requirement**") within the Loan Agreement (*see* Doc. 1-1, pp. 32–33); and (2) request that the Court stay or dismiss the case in favor of arbitration (collectively, "**Alternative Ground**"). (*Id.* at 3, 6–8, 19–23.)

In response, Plaintiff argues that: (1) the Forum-Selection Clause and Arbitration Requirement are unenforceable; and (2) the doctrine of tribal exhaustion does not apply. (Doc. 30.) In support, Plaintiff contends that: (1) Defendant's loan activities are prohibited by the Tribe's laws (*id.* at 4); (2) the Forum-Selection Clause was fraudulently put in place to avoid state and federal regulation of Defendants' practices, seeks to improperly extend tribal jurisdiction to the activities of non-tribal members occurring off the reservation, and is against public policy (*id.* at 5–8); (3) the disclaimer of the applicability of federal law in

the Loan Agreement ("**Federal Law Disclaimer**") bars Defendants from compelling arbitration under the Federal Arbitration Act ("**FAA**") (*id.* at 9–11); and (4) the Arbitration Requirement is void because the entire Loan Agreement unconscionable, illegal, and unenforceable (*id.* at 11–15).

After obtaining leave of Court (*see* Docs. 31, 32), Defendants filed a reply contending, *inter alia*, that: (1) Plaintiff has not met his burden to show that the Forum-Selection Clause is unenforceable and, specifically, has not shown that the Forum-Selection Clause itself was based on fraud; (2) Plaintiff must exhaust his tribal remedies as he does not contest Defendants' demonstration that tribal jurisdiction is colorable; (3) under federal law, the FAA governs the enforceability of the Arbitration Requirement despite the Federal Law Disclaimer; and (4) the Court must compel arbitration because Plaintiff did not specifically challenge the delegation provision ("**Delegation Provision**")[1] in the Arbitration Requirement. (Doc. 33.)

On July 11, 2014, the Court held a hearing on the Motion and took the matter under advisement. (*See* Doc. 42.) However, in the interest of judicial economy, the Court stayed the action pending resolution of two interlocutory appeals ("**Appeals**") within the Eleventh Circuit, which raised the same issues as the Motion—(1) *Inetianbor v. CashCall, Inc.*, 962 F. Supp. 2d 1303 (S.D. Fla. 2013), *aff'd*, 768 F.3d 1346 (11th Cir. 2014) ("***Inetianbor***"); and (2) *Parnell v. Western Sky Financial, LLC*, Case No. 4:14-cv-24-HLM, Doc. 19 (N.D. Ga. 2014), *rev'd*, *Parnell*, 804 F.3d 1142 ("***Parnell***"). (Doc. 45 ("**Stay**

---

[1] As defined by the U.S. Court of Appeals for the Eleventh Circuit, a delegation provision in an arbitration agreement is one that "commit[s] to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015).

**Order**").)

The pertinent arbitration provisions in *Inetianbor* required an authorized representative of the Tribe to conduct arbitration of the parties' disputes. 768 F.3d at 1350–51. However, in light of evidence showing that "the Tribe does not involve itself in arbitration between private parties at all," the Eleventh Circuit agreed with the district court's conclusion that the arbitral forum was unavailable, *id.* at 1354, and—on October 2, 2014—affirmed the district court's denial of the defendant's motion to compel arbitration, *id.* at 1347.

A year later, on October 28, 2015, the Eleventh Circuit issued a decision in the *Parnell* appeal. 804 F.3d 1142. The arbitration provisions under the *Parnell* loan agreement gave the plaintiff the option to submit his disputes to the American Arbitration Association, JAMS, or any other arbitration organization agreed upon by the plaintiff and defendant ("**Choice of Arbitrator Provision**"). *Parnell*, Case No. 4:14-cv-24-HLM, Doc. 1-3, p. 30. The *Parnell* arbitration provisions also contained a delegation provision committing disputes "concerning the validity, enforceability, or scope of [the] loan or the [a]rbitration agreement" to the arbitrator. 804 F.3d 1147–48. Consequently, the Eleventh Circuit reversed the district court's denial of the defendant's motion to compel arbitration on the ground that the district court did not have jurisdiction to review a challenge to an arbitration agreement containing a delegation provision where the plaintiff did not directly challenge the delegation provision. *See id.* at 1144 (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010)).

Upon receiving notification from the parties regarding the Eleventh Circuit's resolution of the Appeals (Docs. 46, 52), the Court issued an Order: (1) lifting its Stay

Order; and (2) directing the parties to notify the Court whether they (i) requested any amendments to the pleadings, or (ii) intended to rest on the current record for resolution of the Motion. (Doc. 53.) The parties each notified the Court of their intent to rest on their previous filings. (Docs. 54, 55.) Defendants, however, submitted two notices of supplemental authority in support of their position. (Docs. 55, 58.)

The matter is now ripe for the Court's consideration. For the reasons explained below, the Court finds that the Arbitration Ground is dispositive and, therefore, will compel the parties to arbitrate their disputes, including their disagreement regarding Grounds One and Two.

## STANDARDS

Under the FAA, "courts must rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013). Upon the motion of any party to a valid arbitration agreement, courts must stay litigation of all claims that fall within the agreement's scope and compel arbitration according to the agreement's terms. *See* 9 U.S.C. §§ 3–4. Arbitration agreements are presumptively valid and enforceable. *See id.* § 2.

However, arbitration under the FAA is ultimately "a matter of consent, not coercion," *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989), and parties opposing arbitration can challenge the formation and validity of a contract containing an arbitration clause. Specifically, the Eleventh Circuit recognizes "three distinct types of challenges to a contract containing an arbitration clause": (1) challenges to the formation, or "the very existence," of the contract; (2) challenges "to the validity of the arbitration clause standing alone"; and (3) challenges "to the validity of

the contract as a whole." *Wiand v. Schneiderman*, 778 F.3d 917, 924 (11th Cir. 2015).

Nonetheless, under a delegation provision "parties may agree to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable." *Parnell*, 804 F.3d at 1146. "When an arbitration agreement contains a delegation provision and the plaintiff raises a challenge to the contract as a whole, the federal courts may not review his claim because it has been committed to the power of the arbitrator." *Id.* "[A]bsent a challenge to the delegation provision itself, the federal courts must treat the delegation provision as valid . . . and must enforce it . . . , leaving any challenge to the validity of the [a]greement as a whole for the arbitrator." *Id.* at 1146–47.

## DISCUSSION

The terms of loan agreements both identical and similar to the one at issue have prompted a wave of litigation across the country and sparked a plethora of decisions that vary in their disposition of the matters at hand.[2] In taking the matter under consideration, the Court has reviewed many of these judicial decisions.

As an initial matter, the Court finds that the FAA governs the Loan Agreement, notwithstanding the Federal Law Disclaimer. The Loan Agreement contains an Arbitration

---

[2] *See, e.g.*, *Parnell*, 804 F.3d 1142; *Inetianbor*, 768 F.3d 1346; *Jackson v. Payday Fin., LLC*, 764 F.3d 765 (7th Cir. 2014); *Smith v. W. Sky Fin.*, LLC, No. 15-3639, 2016 WL 1212697 (E.D. Pa. Mar. 4. 2016); *Yaroma v. CashCall, Inc.*, 130 F. Supp. 3d 1055 (E.D. Ky. 2015); *Brown v. W. Sky Fin., LLC*, 84 F. Supp. 3d 467 (M.D.N.C. 2015); *Chitoff v. CashCall, Inc.*, No. 0:14-CV-60292, 2014 WL 6603987 (S.D. Fla. Nov. 17, 2014); *Heldt v. Payday Fin., LLC*, Case No. 3:13-cv-3023-RAL, Doc. 58 (D.S.D. Mar. 31, 2014); *see also CashCall, Inc. v. Office of the Att'y Gen., Dept. of Legal Affairs*, 173 So. 3d 1056 (Fla. 2d DCA 2015) (involving suit against CashCall by Florida's Attorney General on the ground that the interest rates under the loan agreements violate Florida's Deceptive and Unfair Practices Act).

7

Requirement, and Plaintiff executed it in Florida and then submitted it—via the Internet—to Western Sky in South Dakota. (*See* Doc. 1, ¶¶ 8, 14, 40.) This is precisely the type of agreement within the purview of the FAA. *See Parnell*, 804 F.3d at 1146 (finding that "[t]he FAA governs the Loan Agreement because the parties conducted their business across state lines").

Additionally, despite the choice-of-law provision in the Loan Agreement—which provides that the Loan Agreement is governed by the laws of the Tribe (Doc. 15-1, p. 3)—the parties have not provided the Court with any tribal law regarding contract interpretation. *See also Parnell*, 804 F.3d at 1147. Faced with the same predicament in *Parnell*, the Eleventh Circuit applied Georgia's plain-meaning rule after recognizing that "the plain-meaning rule is a foundational principle of common law contract widely adopted in the United States, including Georgia . . . in which [the plaintiff] viewed and signed the [l]oan [a]greement." *Id.* Adapting this approach to the almost identical circumstances in the instant action, the Court will apply Florida's own plain-meaning rule here.

"Under Florida law, if the terms of [a contract] are clear and unambiguous, a court must interpret the contract in accordance with its plain meaning, and, unless an ambiguity exists, a court should not resort to outside evidence or the complex rules of construction to construe the contract." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1548–49 (11th Cir. 1996). The plain language of Loan Agreement demonstrates that the Arbitration Requirement compels the parties to submit their disputes to arbitration.

In pertinent part, the Arbitration Requirement reads as follows:[3]

> Unless you exercise your right to opt-out of arbitration in the manner described below[4], ***any dispute*** you have with Western Sky or anyone else under this loan agreement will be resolved by binding arbitration. Arbitration replaces the right to go to court . . . . In [a]rbitration, a dispute is resolved by an arbitrator instead of a judge or jury.
>
> **Agreement to Arbitrate.** You agree that ***any Dispute***, <u>**except as provided below**</u>, will be resolved by [a]rbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.
>
> . . . **A "Dispute'" is *any controversy or claim* between you and Western Sky or the holder or servicer of the Note**. **The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands** (whether past, present, or future, including events that occurred prior to the opening of this Account), **based on *any legal or equitable theory*** (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim based upon marketing or solicitations to obtain the loan and the handling or servicing of my account whether such Dispute is based on any tribal, federal, or state constitution, statute, ordinance, regulation, or common law, and **including *any issue* concerning the validity, enforceability, or scope of this loan or the [a]rbitration agreement**. . . .
>
> . . . Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association . . . ; JAMS . . . ; or an arbitration organization

---

[3] To determine what disputes the parties agreed to arbitrate, the Court must begin with the language of the applicable arbitration provision. *World Rentals & Sales, LLC v. Volvo Const. Equip. Rents, Inc.*, 517 F.3d 1240, 1245 (11th Cir. 2008). Accordingly, "[t]he court can consider evidence outside of the pleadings for purposes of a motion to compel arbitration." *Chambers v. Groome Transp. of Ala.*, 41 F. Supp. 3d 1327, 1334 (M.D. Ala. 2014).

[4] Pursuant to a "Right to Opt Out" provision, borrowers were given the opportunity to opt out of the Arbitration Provision by providing written notice within sixty days after the date the loan was funded. (Doc. 1-1, p. 34.)

9

>agreed upon by you and the other parties to the Dispute. The arbitration will be governed by the chosen arbitration organization's rules and procedures applicable to consumer disputes, to the extent that those rules and procedures do not contradict either the law of the Cheyenne River Sioux Tribe or the express terms of this Agreement to Arbitrate . . . .
>
>. . .
>
>**Waiver of Rights.** YOU HEREBY AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, TO HAVE A COURT DECIDE YOUR DISPUTE, TO PARTICIPATE IN A CLASS ACTION LAWSUIT, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT ARE AVAILABLE IN A LAWSUIT. . . .
>
>. . .
>
>. . . Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration.

A close reading of the Arbitration Agreement reveals that all disputes involving the Loan must be submitted to arbitration, with two explicit exceptions. First, the "Waiver of Rights" provision provides that "the validity, effect, and enforceability of [the] waiver of class action lawsuit and class-wide [a]rbitration is to be determined solely by a court of competent jurisdiction located within the Cheyenne Rivers Sioux Tribal Nation, and not by the arbitrator." (Doc. 1-1, p. 33.) The Arbitration Requirement also contains an exception for small claims, which are subject to the jurisdiction the Cheyenne River Sioux Small Claims Court. (*Id.* at 34.)

Thus, the only claims not subject to arbitration are: (1) disputes regarding the waiver of class action lawsuits and class-wide arbitration; and (2) small claims. (*See* Doc. 1-1, pp. 33, 34.) All other disputes—including the enforceability of the Forum-Selection Clause, the validity of the Arbitration Requirement, and the applicability

of tribal exhaustion—must be submitted to arbitration. *See Yaroma*, 130 F. Supp. 3d 1055 (compelling arbitration and declining to rule on the issue of *forum non conveniens* and tribal exhaustion on similar grounds).

This result is also in accord with the Eleventh Circuit's decision *in Parnell*. The Arbitration Requirement here is identical to the one considered in *Parnell* and contains a Delegation Provision requiring arbitration of "any issue concerning the validity, enforceability, or scope of [the] [L]oan or the [a]rbitration agreement." (*Compare* Doc. 1-1, p. 33 (containing this provision), *with Parnell*, 804 F.3d at 1145 (same).) However, neither Plaintiff's Complaint, nor its response to the Motion, directly challenges the Delegation Provision. Moreover, in light of the *Parnell* decision, the Court explicitly gave Plaintiff an opportunity to amend its pleadings, yet despite such prompting, Plaintiff elected to rest on his prior briefing. (Docs. 53, 54.) Therefore, in the absence of any challenge to the Delegation Provision, the Court must enforce the Arbitration Requirement according to its terms. *See Parnell*, 804 F.3d at 1149.

Here, the Arbitration Requirement provides that arbitration shall be conducted by the Tribe, unless Plaintiff selects an alternative organization to administer the arbitration. (*See* Doc. 1-1, pp. 32, 33.) Pursuant to the Choice of Arbitrator Provision, permissible alternatives include the American Arbitration Association, JAMS, or an organization otherwise agreed to by the parties. (*Id.* at 33.) In *Inetianbor*, the Eleventh Circuit did not find the Tribe to be an available arbitral forum. 786 F.3d at 1347, 1354; *accord Jackson*, 764 F.3d at 779–80. Defendants have made no contrary showing here and, upon review of the record, the Court finds none. Therefore, to ensure that Plaintiff has access to an available arbitral forum, the Court will require the parties to select either the American

Arbitration Association or JAMS to administer the arbitration.[5]

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendants' Motion to Dismiss or, Alternatively, to Compel Arbitration and Stay or Dismiss the Case, and Memorandum in Support (Doc. 15) is **GRANTED IN PART and DENIED IN PART**.

    a. To the extent that Defendants seek to compel arbitration of Plaintiff's claims, the Motion is **GRANTED**.

    b. In all other respects, the Motion is **DENIED**.

2. The case is **STAYED** pending arbitration.

3. The parties shall submit their disputes to the American Arbitration Association or JAMS.

4. The parties are **DIRECTED** to jointly notify the Court of the status of the arbitration proceedings on Tuesday, **August 23, 2016**, and every ninety (90) days thereafter. The parties are further **DIRECTED** to immediately notify the Court upon conclusion of the arbitral proceedings.

5. The Clerk is **DIRECTED** to administratively close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on May 26, 2016.

---

[5] As a final matter, the Court finds that the case is due to be stayed pending arbitration. "Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration," not dismissed. *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992). Absent binding authority mandating dismissal, the Court rejects Defendants' request for dismissal of Plaintiff's claims in lieu of a stay. (*See* Doc. 15, pp. 22–23.)



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record